IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| THERESA CARATOZZOLO, | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| v. | Civil Action<br>No. 1:23-cv-03476-KMW-EAP |
| GLOUCESTER TOWNSHIP PUBLIC SCHOOLS, *et al.*, | |
| Defendants. | **OPINION** |

**Michael S. Di Croce, Esq.**
DI CROCE LAW OFFICE PC
17 Stony Creek Court
Indian Mills, NJ 08088

*Counsel for Plaintiff Steven B. Baglivo*

**Amelia Mauriello Lolli, Esq.**
**Michael S. Mikulski, Esq.**
CONNOR WEBER & OBERLIES
304 Harper Drive, Suite 201
Moorestown, NJ 08057

*Counsel for Defendants Gloucester Township
Public Schools and Gloucester Township
Board of Education*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff Theresa Caratozzolo ("Plaintiff") is a former special-education teacher with the Gloucester Township School District. She brings this action against Gloucester Township Public Schools and the Gloucester Township Board of Education (collectively, the "District"), alleging that it failed to accommodate her disability and unlawfully subjected her to other adverse treatment during her employment.

Presently before the Court is the District's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, which Plaintiff has opposed. For the reasons set forth below, the District's motion is granted in part and denied in part.

## II.    BACKGROUND

This litigation arises from a series of disputes concerning Plaintiff's employment with the District and its handling of her asserted disability-related needs. For purposes of this Opinion, the Court recounts only those undisputed facts necessary to resolve the District's Motion.[1]

Before joining the District in 2012, Plaintiff worked for approximately eleven years as a special-education teacher at an elementary school in another district. (ECF No. 61 at 19, ¶ 1.) She alleges that during her time at that school, she was repeatedly subjected to physical abuse by one particular child, including grabbing, hitting, spitting, and throwing objects at her. (ECF No. 1-1 at 7.) According to Plaintiff, those experiences caused significant psychological trauma and ultimately led her to resign in June 2011. After seeking treatment from a psychiatrist later that October, she was diagnosed with complex post-traumatic stress disorder, or "CPTSD."

The following year in August 2012, Plaintiff interviewed for and obtained a special-education teaching position at Anne Mullen Middle School in the Gloucester Township School District. (ECF No. 61 at 6, ¶¶ 3–4.) Plaintiff alleges that, during her interview, she disclosed her prior trauma to then-Principal Joanne Acerba and explained that her CPTSD prevented her from working with elementary-school-age students. (ECF No. 1 ¶ 20.) She further alleges that Acerba

---

[1] Plaintiff has neither responded to the District's statement of material facts nor offered a factual account of the record of her own. Accordingly, the Court deems undisputed the facts set forth in the District's moving papers. *See* L. Civ. R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."); *Kachur v. Wmc Mortg. Corp.*, No. 18-cv-15111, 2020 WL 4282732, at *2 (D.N.J. July 27, 2020) (deeming statement of material facts undisputed where plaintiff failed to file a responsive statement).

assured her that she would not be assigned to an elementary school, though the District denies that any such assurance was made. (*Id.* ¶ 21.)

In the ensuing six years, Plaintiff successfully worked at two middle schools within the District—first at Anne Mullen during the 2012–2013 school year, and then at Glen Landing Middle School from 2013 through 2018. During that period, Plaintiff's condition reportedly remained in "long-term, sustained remission," with no significant symptoms impairing her ability to function. (ECF No. 1-1 at 7.)

The circumstances changed in May 2018, when the District notified Plaintiff that, as part of a broader reallocation of teaching staff, she would be transferred to Glendora Elementary School for the following school year. Plaintiff maintained that returning to an elementary-school setting would trigger a recurrence of CPTSD symptoms related to her prior teaching experience. She therefore submitted a written request for a disability accommodation on May 29, 2018, asking the District to allow her to remain in a middle-school environment. In support of that request, Plaintiff provided a note from her psychiatrist stating that Plaintiff had been deeply traumatized by physical abuse at her prior job and that the prospect of returning to an elementary school had already triggered "traumatic re-experiencing, flashbacks, and acute anxiety/panic attacks." (ECF No. 61-17.) She therefore recommended that Plaintiff "remain in the middle school setting, preferably in the same classroom or school building." (ECF No. 1-1 at 7.)

The District denied her request to rescind the transfer, but invited Plaintiff to engage in the interactive process to explore other reasonable accommodations (ECF No. 61-8.) On August 23, 2018, the parties convened an interactive-process meeting during which Plaintiff requested two alternative accommodations, specifically a classroom with windows and a procedure for how to obtain immediate assistance if she ever encountered an unruly child. (ECF No. 61-9.) The District

agreed to those measures. Plaintiff had the opportunity to view her assigned classroom in advance and found the same acceptable. To address her second request, the District posted next to the classroom telephone a list of the direct extensions for the Principal and Head Teacher, whom the District determined would be available at any given time to assist in the event Plaintiff required assistance. On these terms, Plaintiff accepted her transfer.

Plaintiff successfully worked at Glendora Elementary without incident between 2018 and 2020. Though, she alleges that the stress of being in an elementary-school setting eventually forced her to request intermittent FMLA leave, which the District approved for the period of January 31, 2020, through January 30, 2021. (ECF Nos. 1 at ¶¶ 50–51; 61-6.) However, by March 2020, all New Jersey public schools were closed due to the COVID-19 pandemic. That same month, the District gave Plaintiff an opportunity to transfer back to the middle-school setting, offering her a position at C.W. Lewis Middle School for the 2020–2021 school year. Plaintiff accepted the assignment and completed her remaining time at Glendora Elementary.

For reasons that are not entirely clear from the record, Plaintiff failed to appear for work at C.W. Lewis for the first three days of September 2020.[2] The District consequently issued Plaintiff a "*Rice* notice," and the Board of Education was subsequently advised of her absences during an executive session on September 22, 2020.[3] (ECF Nos. 1-1 at 17; 61-5.) The Board took no action

---

[2] The record shows that the evening before she was supposed to report to the middle school, she emailed the principal of C.W. Lewis explaining that she had driven to Virginia to pick her daughter up earlier that day, and inquired as to whether she was required to quarantine. (ECF No. 1-1 at 15.) The principal responded the following morning stating that, given the short duration of the trip, he did not believe Plaintiff was required to quarantine. (*Id.*) Nevertheless, Plaintiff did not report to work that day and for two additional days thereafter. The record does not supply a consistent explanation for those absences. At times, Plaintiff has maintained that the District misinterpreted the New Jersey Governor's quarantine directive in place at the time, and that she unilaterally elected to "honor" that directive by staying at home. (ECF No. 1 at ¶ 55.) Elsewhere, she has attributed the absences to her mental health, as evidenced by a psychiatrist's note submitted to the District on September 24, 2020, stating that Plaintiff's absences earlier that month were "approved." (ECF No. 1-1 at 20.)

[3] A "*Rice* notice" refers to advance notice given to a public employee that a New Jersey public entity intends to discuss a personnel matter in closed session that could adversely affect the employee. *See Rice v. Union Cnty. Reg'l*

against Plaintiff, and there is no evidence that the District ever disciplined her, reduced her compensation, issued an adverse evaluation, or imposed any other tangible employment action as a result.

Nevertheless, Plaintiff maintains that the District's response to her absences caused her significant emotional distress. Despite having returned to a middle-school setting, Plaintiff claims that the "stress of the workplace" caused a resurgence of her CPTSD symptoms, forcing her to take a medical leave of absence the week of September 21, enter a mental health treatment program on September 29, transition to full-time FMLA leave from October 5 through December 27, 2020. (ECF Nos. 1; 61-5.)

In anticipation of returning to work in January 2021, Plaintiff submitted another formal written request for accommodations on December 23, 2020. (ECF No. 61-8.) In her request, Plaintiff described difficulties she had previously experienced during the few days she had worked at C.W. Lewis prior to taking leave. Those difficulties principally involved navigating the building and understanding the practices and procedures of a new school. She attributed those difficulties to her CPTSD, as well as to a newly disclosed ADHD diagnosis. Plaintiff then set out an extensive list of detailed demands, threatening litigation if the District did not acquiesce. Among other things, she sought the assignment of a designated teacher "buddy" to help orient her to the school, and also changes to her colleagues' work practices, including a requirement that they complete all lesson plans by Friday.

The District denied Plaintiff's request. Dr. Violet Martin, the District's director of special services, explained by email that the District had already accommodated Plaintiff on several

---

*High Sch. Bd. of Ed.*, 382 A.2d 386 (N.J. Super. Ct. App. Div. 1977). Its purpose to allow the employee to decide whether to request that the discussion occur publicly under N.J. STAT. ANN. § 10:4-12(b)(8). *See Kean Fed'n of Tchrs. v. Morell*, 187 A.3d 153, 157 (N.J. 2018).

occasions and that further accommodations could have district-wide consequences, including adversely affecting the delivery of individualized education programs to students with disabilities. (ECF No. 61-9.)

The record reflects additional events that bear on claims the Court does not address in this opinion. For purposes of telling a coherent story, the Court notes that Plaintiff returned from leave in January 2021 and continued working at C.W. Lewis Middle School through 2022. Her final day of teaching was September 8, 2022, after which she took FMLA leave from September 23 through December 16, 2022. The District subsequently advised Plaintiff that she could not return to teaching without appropriate psychiatric clearance. The District maintains that Plaintiff never obtained the required clearance, although it continued to hold her position open. Plaintiff thereafter pursued disability retirement. (ECF Nos. 61-12, 61-13.) Ultimately, the Board of Trustees of the Teachers' Pension and Annuity Fund determined that Plaintiff was permanently disabled and granted her disability retirement, effective March 1, 2024. (ECF No. 61-16.)

## III.    LEGAL STANDARD

A court may grant summary judgment when the materials of record "show[ ] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law.").

6

Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If satisfied, the burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* (internal quotation marks omitted) (emphasis in original). To survive a motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256–57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements[.]'" *Trap Rock Indus., Inc. v. local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

## IV.    DISCUSSION

As previously indicated, this action involves a broad array of disputes concerning Plaintiff's employment with the District, and are the predicates of various state-law claims ranging from breach of contract to defamation. Despite the breadth of those allegations, Plaintiff asserts only one claim arising under federal law, specifically under the Americans with Disabilities Act ("ADA"). Because that claim provides the sole basis for the Court's original jurisdiction, and because its disposition may bear on whether the Court should continue to exercise supplemental jurisdiction over the remaining state-law claims, the Court begins its analysis there.

### A. ADA Claim

The ADA makes it unlawful for covered employers to "discriminate against a qualified individual on the basis of disability." 42 U.S.C.A. § 12112(a). That prohibition includes failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless doing so "would impose an undue hardship on the operation of the [employer's] business." *Id.* § 12112(a). "Reasonable accommodations" are defined to include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

To establish a claim under the ADA based on a failure to accommodate, a plaintiff must show: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated but for the employer's lack of good faith. *See Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 320 (3d Cir. 1999).

Plaintiff asserts two violations of the ADA. First, she contends that the District failed to accommodate her CPTSD in 2018 by denying her request to remain in a middle-school setting rather than transferring her to Glendora Elementary School. She also alleges the District violated the ADA in 2020 insofar as it failed to invite or initiate and interactive process in response to her request for additional accommodations.[4] The District seeks summary judgment on both theories,

---

[4] The Court is not convinced that Plaintiff has pled a separate ADA claim based on the District's handling of her 2020 request. Count I expressly alleges an ADA violation arising from the District's initial denial of Plaintiff's 2018 request to remain in a middle-school setting. Although the Complaint also several facts regarding Plaintiff's 2020

arguing that Plaintiff cannot establish her *prima facie* case. For purposes of the Motion, it does not dispute that Plaintiff was disabled or that she requested accommodations. The dispute instead concerns the third and fourth prongs of her burden: whether the District failed to make a good faith effort to assist, and whether Plaintiff could have been reasonably accommodated but for the employer's lack of good faith. *See Capps*, 847 F.3d at 157.

Plaintiff, for her part, offers little assistance in resolving the District's motion. Her opposition brief is as truncated as it is skeletal: it does not engage with the governing elements of her claim, identify any record evidence to support her theories, or develop any argument explaining how a reasonable jury could return a verdict in her favor. Instead, Plaintiff's discussion of her ADA claims consists only of a handful of generalized assertions by counsel, unsupported by citation to either the summary-judgment record or the governing law. This is insufficient to create any genuine dispute of material fact. *See Fla. v. Georgia*, 585 U.S. 803, 872 (2018) ("[S]tatements in briefs are not evidence."); *see also Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").

The Court is not required to scour the record for evidence Plaintiff has not identified, credit factual assertions not supported with record evidence, or construct arguments on her behalf. Evaluating Plaintiff's ADA claims against the undisputed material facts, the Court concludes that the District is entitled to judgment as a matter of law.

---

request, it does not clearly identify those facts as a distinct, independently actionable ADA violation. *Compare* Compl. ¶¶ 76–78, *with* ¶¶ 116–24. Nevertheless, because the District's motion addresses both the 2018 and 2020 theories, the Court will, for purposes of resolving the motion, treat both claims as if they have been adequately pled.

First, to the extent Plaintiff relies on the District's denial of her specific request to remain in a middle-school setting in 2018, her claim fails. "The ADA does not [] require an employer to provide a disabled employee with the accommodation of her choosing." *Diaz v. City of Philadelphia*, 565 F. App'x 102, 106 (3d Cir. 2014). Rather, it requires the employer to "make a good faith effort to engage in an interactive process to determine a reasonable accommodation" that would enable them to perform the essential functions of the job. *Williams v. Pinnacle Health Fam. Care Middletown*, 852 F. App'x 678, 680 (3d Cir. 2021) (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 507 (3d Cir. 2010); *see also* 29 C.F.R. § 1630.2(o)(1)(ii). "Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999).

Here, the undisputed record establishes that the District satisfied that obligation. The District met with Plaintiff, considered the limitations she identified, and explored measures that might address them. During that process, Plaintiff proposed two alternative accommodations: a classroom with windows and a means of obtaining prompt assistance. With Plaintiff's blessing, the District implemented both. On these facts, no reasonable jury could find that the District denied Plaintiff a reasonable accommodation to her CPTSD-related limitations. *See Keyhani v. Trs. of Univ. of Pennsylvania*, 812 F. App'x 88, 91 (3d Cir. 2020) (holding that an employee's preference for one reasonable accommodation over another was "not sufficient to establish that defendant failed to act in good faith").

10

As to her second claim, Plaintiff appears to hypothesize that the District's rejection of the accommodations listed in her December 2020 letter, without an "individualized assessment," amounted to a failure to engage in an interactive process and a violation of the ADA. *See* Pl.'s Opp'n Br. at 3–4. But even accepting that contention, Plaintiff still must satisfy the fourth prong of her *prima facie* case by showing that she "could have been reasonably accommodated but for the employer's lack of good faith." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010) (quoting *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004)). If Plaintiff truly required additional accommodations for any disability-imposed limitation, it is now incumbent upon her to show, "as part of her burden of persuasion," that there existed "an effective accommodation" that would have "render[ed] her otherwise qualified" for her position. *Fowler v. AT&T, Inc.*, 19 F.4th 292, 307 (3d Cir. 2021) (quoting *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 670 (3d Cir. 1999)). Plaintiff can meet that burden by showing the existence of *some* reasonable accommodation—even one she did not specifically request—that would have addressed a disability-imposed limitation and rendered her capable of performing the essential functions of her position.

Plaintiff does not squarely address this aspect of her *prima facie* burden. Even construing her opposition generously, the Court discerns only three vague assertions that could arguably bear on the issue: (i) that "[m]any of the items" set forth in her December 2020 letter had previously been provided at Glendora Elementary; (ii) that she had "previously performed the job successfully" with "those accommodations"; and (iii) that other school districts "routinely provide similar supports for special education staff." Pl.'s Opp'n Br. at 3–4.

None of these assertions identifies any concrete accommodation at all, much less supplies evidence of a reasonable accommodation that would have addressed a disability-imposed

11

limitation. Plaintiff does not identify which of her numerous requests (if any) had actually been implemented at Glendora, what disability-related limitation any particular measure alleviated, or how it would have enabled her to perform the essential functions of her position. Her assertion concerning the practices of other school districts is doubly speculative and no more probative. Thus, even assuming that the District failed to make a good faith effort to engage in an interactive process, she provides no basis on which a jury could find that she could have been reasonably accommodated but for the lack of good faith. *See Drizos v. PNC Invs. LLC*, No. 22-1736, 2023 WL 4986496, at *6 (3d Cir. Aug. 3, 2023) (affirming summary judgment on ADA claim where plaintiff failed to address fourth prong of *prima facie* burden); *Gavurnik v. Home Props., L.P.*, 712 F. App'x 170, 176 (3d Cir. 2017) (affirming summary judgment where the plaintiff had identified an accommodation but failed to adduce any evidence that it would have effectively addressed a disability-imposed limitation).

In conclusion, Plaintiff has supplied no evidence from which a reasonable jury could find that the District failed to accommodate her in violation of the ADA. The undisputed record shows that in response to Plaintiff's 2018 request, the District engaged in an interactive process, considered the limitations she identified, and implemented reasonable alternative accommodations that Plaintiff herself proposed. And even assuming the District should have initiated another interactive process in 2020, Plaintiff has yet to point to any reasonable accommodation that could have emerged from such a process and alleviated some limitation imposed by her disability. Without more, any purported "lack of investigation into a reasonable accommodation" on the District's part is simply "unimportant." *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 233 (3d Cir. 2000) (Alito, J.) (internal quotation marks omitted). For these reasons, the Court grants the District's motion as to Plaintiff's ADA claims.

**B.  Remaining State Law Claims**

28 U.S.C. § 1367(c)(3) grants district courts discretion to decline supplemental jurisdiction once it "has dismissed all claims over which it has original jurisdiction." The Third Circuit has long instructed that, "absent extraordinary circumstances," supplemental jurisdiction over a plaintiff's state-law claims "should be declined where [her] federal claims are no longer viable." *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (internal quotation marks omitted). Observing no such extraordinary circumstances here, the Court declines to retain supplemental jurisdiction over Plaintiff's remaining NJLAD claims and accordingly remands this action to state court. *See D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552 F. App'x 110, 117 (3d Cir. 2014) (affirming decision to decline supplemental jurisdiction over state-law claims following entry of summary judgment on all federal claims); *see also Brumfield v. Atl. City Hous. Auth.*, No. 21-cv-16061, 2025 WL 227311, at *13 (D.N.J. Jan. 17, 2025) (remanding action to state court after entering summary judgment on federal discrimination claims); *S.M. o/b/o B.M. v. Freehold Reg'l Sch. Dist. Bd. of Educ.*, No. 22-cv-107, 2024 WL 180827, at *15 (D.N.J. Jan. 17, 2024) (declining supplemental jurisdiction over NJLAD claims following summary judgment on all federal claims).

No extraordinary circumstance warrants retention of this case. With the ADA claims resolved, this action no longer presents a federal question. What remains is a collection of claims governed entirely by New Jersey law and requiring resolution of grievances and controversies the Court did not discuss in deciding the federal claims. Retaining jurisdiction would do little more than draw the Court into a broader set of disputes concerning state-law duties, remedies, and defenses arising from Plaintiff's employment with a local public entity. Those questions are more appropriately resolved by a New Jersey court. Accordingly, the Court declines to exercise

13

supplemental jurisdiction and will dismiss the remaining claims without prejudice so that they can be pursued in an appropriate forum. *See D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552 F. App'x 110, 117 (3d Cir. 2014) (affirming decision to decline supplemental jurisdiction over state-law claims following entry of summary judgment on all federal claims); *see also S.M. o/b/o B.M. v. Freehold Reg'l Sch. Dist. Bd. of Educ.*, No. 22-cv-107, 2024 WL 180827, at *15 (D.N.J. Jan. 17, 2024) (declining supplemental jurisdiction over state-law claims against employer school district following summary judgment on all federal claims).

## V.    CONCLUSION

For all of the reasons set forth above, the Court grants the District's motion as to Plaintiff's ADA claims only. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims and therefore denies the District's motion as to those claims and dismisses them without prejudice so that Plaintiff may pursue them in an appropriate state forum.

Dated: June 30, 2026

KAREN M. WILLIAMS, U.S.D.J.

14